UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANNE B. AXELROD,

               Plaintiff,

      -against-

HARRIS INTERACTIVE INTERNATIONAL, INC.
and HARRIS INTERACTIVE, INC.,

               Defendants.

------------------------------------------------------------------X

07 CV 11379

COMPLAINT

JURY TRIAL DEMANDED

JUDGE SULLIVAN

     Plaintiff Anne B. Axelrod, by her attorney, Joseph Monaco, hereby complains of defendants Harris Interactive International, Inc. and Harris Interactive, Inc. as follows:

PRELIMINARY STATEMENT

     1.     This is an action brought under the Federal Age Discrimination In Employment Act ("ADEA"). This complaint also contains claims brought under the New York State Human Rights Law and the New York City Administrative Code, pursuant to this Court's supplemental jurisdiction.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

     2.     On August 6, 2007, plaintiff timely filed a Charge of Discrimination and supporting papers against defendants with the United States Equal Employment Opportunity Commission ("EEOC"), within 300 days of her unlawful termination, which occurred on October 10, 2006.

3. On October 31, 2007, the EEOC issued plaintiff a Notice of Right to Sue Letter, a copy of which is annexed as "Ex. A."

4. The instant action is being commenced within ninety (90) days from the time that the EEOC issued the Notice of Right to Sue Letter in this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over plaintiff's Federal ADEA claims pursuant to general federal question jurisdiction, 28 U.S.C. § 1331 as well as the express grant of jurisdiction for ADEA claims set forth at 29 U.S.C. § 626(b).

6. This Court has jurisdiction over plaintiff's New York State Human Rights Law and New York City Administrative Code claims pursuant to its supplemental jurisdiction, 28 U.S.C. § 1367, as these claims are so related to plaintiff's federal claim that they for part of the same case or controversy under Article III of the United States Constitution.

7. Venue is appropriate in the Southern District of New York since the events and/or omissions giving rise to the claim occurred in the Southern District of New York, and since, upon information and belief, one or both defendants reside within this Judicial District. 28 U.S.C. § 1391(b).

## PARTIES

8. At all times set forth herein, plaintiff Anne B. Axelrod ("Axelrod") was and is an Individual residing at 280 Windsor Place, Brooklyn, New York 11218.

9. Upon information and belief, at all times set forth herein, defendant Harris

2

Interactive International, Inc. ("Harris Interactive International") was and is a corporation organized under Delaware Law, and authorized to do business in New York State. Upon information and belief, Harris Interactive International's corporate headquarters is located at 60 Corporate Woods, Rochester, New York, NY 14623. The principal place of business wherein the events comprising the basis of this claim arose at the offices located at 161 Sixth Avenue, New York, New York 10013.

10. Upon information and belief, at all times set forth herein, defendant Harris Interactive, Inc. ("Harris Interactive") was and is a corporation organized under Delaware Law, and authorized to do business in New York State. Upon information and belief, Harris Interactive's corporate headquarters is located at 60 Corporate Woods, Rochester, New York, NY 14623. The principal place of business wherein the events comprising the basis of this claim arose at the offices located at 161 Sixth Avenue, New York, New York 10013.

## FACTUAL ALLEGATIONS

11. Plaintiff Axelrod's date of birth is February 22, 1947.

12. In February, 1999, Axelrod was hired by Louis Harris & Associates as a Senior Vice President, and was placed in charge of marketing research in the Healthcare division. (Harris was best known to the general public as the originator of the famous "Lou Harris Poll" used in political contests.)

13. As a result of a subsequent corporate acquisition, Louis Harris & Associates became known as Harris Interactive International and Harris Interactive (collectively "Harris"). Axelrod was a Senior Vice President and a "group head" with a

large corner office on the executive floor, and was widely considered both a leader in her field and a leader at Harris.

14. While leading the health care research division, Axelrod supervised anywhere between 20-25 people, including 2 Senior Vice Presidents and 2 Vice Presidents. Axelrod was instrumental in increasing the revenues of the division exponentially – from approximately $1.5 million in 1999 to approximately $12.5 million in 2005. The Healthcare division was recognized as the most prestigious and profitable division at Harris.

15. Nonetheless, Axelrod did not fit in socially at Harris. Most of the division was under 40 years of age, and, upon information and belief, frequently socialized both at and off the job.

16. In January, 2005, Axelrod was transferred out of the healthcare division, which she had spearheaded, and transferred into the inferior and far less profitable Media & Entertainment ("M & E") division.

17. Upon information and belief, M & E only had target revenues in the $900,000 - $3 million range, as opposed to the healthcare target Axelrod would have been responsible for, which was expected to be between $15 million - $20 million. This was significant because bonuses were based largely on revenue.

18. Axelrod's transfer to M & E involved a decreased compensation package and/or potential compensation package as well as a transfer from a corner executive office to an inferior, interior office. In addition, her corner office was assigned to a newly hired junior sales person.

4

19. Axelrod's age was a motivating factor in Harris's determination to transfer her to M & E. Her two younger associates within the Healthcare division were both promoted soon after her transfer out of the healthcare division.

20. During her time in M&E Axelrod was constantly "cut out of the loop," as management dealt, upon information and belief, directly with her less-senior and younger "subordinates."

21. In one e-mail, Axelrod provided written notice of her dissatisfaction with her mistreatment, writing to her Supervisor that: *"Given my role, I would really appreciate a heads up on what you're planning. It's very awkward to have my direct reports [subordinates] knowing more about what's going on in the company than I do."*

22. On or about June or July of 2005, Axelrod was again demoted, when she was transferred out of her executive position in the M & E division and assigned to the financial services division in a non-executive sales role. In addition, her compensation package and/or potential compensation package was decreased again.

23. Between June and September, 2005, Axelrod was not assigned any work projects.

24. While Axelrod subsequently was given accounts to work on, none of her assignments carried the prestige, responsibility, and ability to be a top producer as was the case when she was leading a Healthcare group.

25. At all times set forth herein, Harris, both formally and informally, promoted a company policy of advancing "young" employees to positions of authority, at the expense of older employees.

26. On October 10, 2006, Harris terminated Axelrod.

27. Axelrod learned that she was being terminated presumably for mispronouncing the name of "Unum," one of her clients, and not reporting to a junior employee, which Axelrod denies.

28. In truth and in fact, the purported grounds for termination were pretextual. Axelrod was terminated because of a corporate culture to recruit and advance younger workers, while not promoting, demoting and ultimately firing older senior level managers, or forcing them into retirement.

29. Upon information and belief, other senior-level staff members in their 50's or 60's were not promoted, demoted and/or fired by Harris during the time-frame of the events set forth in this complaint, including, without limitation: Bob Leitman, Edgar Adams, Jim Slater, Hal Quinley, Humphrey Taylor, David Krane, Erich Kramer, Jim Thomas, Marie Talbergs and Barbara Bertner.

## PLAINTIFF'S FIRST COUNT
{A Federal Count Based Upon ADEA}

30. Plaintiff Axelrod repeats each of the above-stated allegations, thereby incorporating such allegations into this Count by reference.

31. At all times set forth herein, plaintiff Axelrod was an "employee" of defendants Harris Interactive International and Harris Interactive, as this term is used at 29 U.S.C. § 630(f).

32. At all times set forth herein, defendants Harris Interactive International and Harris Interactive were engaged in an industry affecting commerce, with more than twenty (20) employees for each working day in each of twenty (20) or more calendar

weeks in the current or preceding year, and, thus, each entity is an "employer" as that term is used at 29 U.S.C. § 630(b).

33. At all times set forth herein, plaintiff Axelrod was/is a protected individual under the ADEA. 29 U.S.C. § 631(a), by virtue of her date of birth, February 22, 1947.

34. The ADEA provides at 29 U.S.C. § 623(a)(1) "that it shall be unlawful for an employer to. . .discharge any individual or otherwise discriminate against any individual with respect to his compensation terms, conditions, or privileges of employment because of such individual's age."

35. At all times set forth herein, defendants Harris Interactive International and Harris Interactive were bound by the requirements of 29 U.S.C. § 623(a)(1) and was not and is not exempted from this section's requirements.

36. At all times set forth herein, plaintiff Axelrod was qualified to perform and to continue to perform her job responsibilities.

37. Defendants Harris Interactive International and Harris Interactive violated plaintiff Axelrod's rights protected under the ADEA by terminating her from her employment under circumstances that create a reasonable inference that she was terminated based upon her age. Such circumstances include, but are not limited to: 1) Axelrod's repeated demotions prior to termination, which were at odds with her job performance as a top producer in the health care division; 2) the implausible pretextual reasons advanced by defendants for her termination, including, without limitation, her alleged mispronunciation of "Unum;" 3) the defendants' corporate policy of promoting younger employees into senior-level management position as well as the youth-oriented corporate culture of defendants; and 4) the disparate treatment of similarly situated senior

management employees in their 50's and 60's who were also not promoted, demoted and/or terminated, or in the alternative, the disparate impact that the defendants' acts and omissions have had in causing the lack of promotion, demotions and/or terminations of Axelrod and those similarly situated.

38. As a result of the foregoing violations of the ADEA, plaintiff seeks a judgment awarding her back pay, front pay, compensatory damages for mental anguish and loss of enjoyment of life, liquidated damages in an amount two-times the amount of plaintiff's back pay award or other measure authorized by law, punitive damages, in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00), together with the taxation of reasonable attorney fees, costs and disbursements.

## PLAINTIFF'S SECOND COUNT
### {Based Upon the New York State Human Rights Law}

39. Plaintiff Axelrod repeats each of the above-stated allegations, thereby incorporating such allegations into this Count by reference.

40. At all times set forth herein, plaintiff Axelrod was an "employee" within the meaning of § 292 of the New York Human Rights Law.

41. At all times set forth herein, defendants Harris Interactive International and Harris Interactive were "employers" within the meaning of § 292(5) of the New York Human Rights Law, by virtue of employing four or more individuals at all relevant times set forth herein.

42. The New York Human Rights Law, at § 296(1) provides that "[i]t shall be an unlawful discriminatory practice. . .[f]or an employer. . .because of age. . .to refuse to

hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

43. For the same reasons set forth in plaintiff's FIRST COUNT, defendants violated Axelrod's rights protected under § 296(1) of New York's Human Rights Law by terminating her employment.

44. Additionally, defendants violated Harris's rights protected under § 296(1) of New York's Human Rights Law by adversely affecting the conditions and privileges of her employment, by, among other things: 1) transferring her from the highly profitable health care division into M & E in January, 2005; 2) transferring her from M & E on or about June or July, 2005 and into a "sales role" on or about September, 2005; 3) refusing to give Axelrod work assignments from on/or about June, 2005 through on or about September, 2005.

45. The foregoing alteration of conditions and privileges of employment not only resulted in Axelrod's diminished prestige within the organization, but also directly affected her ability to earn income, as bonuses, at all relevant times set forth herein, were based upon revenue brought into the company by the employee.

46. As a result of the foregoing violations of the New York State Human Rights Law, plaintiff Axelrod seeks a judgment against defendants awarding her back pay, front pay, compensatory damages for mental anguish and loss of enjoyment of life in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00), together with the taxation of costs and disbursements as authorized by statute.

## PLAINTIFF'S THIRD COUNT
{Based Upon the New York City Administrative Code}

47.     Plaintiff Axelrod repeats each of the above-stated allegations, thereby incorporating such allegations into this Count by reference.

48.     At all times set forth herein, defendants Harris Interactive International and Harris Interactive were "employers," pursuant to § 8-102(5) of the New York City Administrative Code, by virtue of employing four or more individuals at all relevant times set forth herein.

49.     Pursuant to Administrative Code § 8-120(a), it is unlawful "[f]or an employer or an employee or agent thereof, because of the actual or perceived age. . .of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

50.     For the reasons set forth in plaintiff Axelrod's First and Second Counts, defendants Harris Interactive International an Harris Interactive violated plaintiff's rights protected under § 8-120(a) of the New York City Administrative Code by terminating her employment.

51.     For the reasons set forth in plaintiff Axelrod's Second Count, defendants Harris Interactive International an Harris Interactive also violated plaintiff's rights protected under § 8-120(a) of the New York City Administrative Code by adversely affecting the conditions and privileges of her employment, by, among other things: 1) transferring her from the highly profitable health care division into M & E in January, 2005; 2) transferring her from M & E on/or about June or July and into a "sales role" on

or about September, 2005; 3) refusing to give Axelrod work assignments from on/or about June, 2005 through on or about September, 2005.

52. As a result of the foregoing violations of the New York City Administrative Code, plaintiff seeks a judgment awarding her back pay, front pay, compensatory damages for mental anguish and loss of enjoyment of life, punitive damages, in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00), together with the taxation of reasonable attorney fees, costs and disbursements.

WHEREFORE, plaintiff respectfully demands:

1) On the First Count, a judgment awarding plaintiff Axelrod back pay, front pay, compensatory damages for mental anguish and loss of enjoyment of life, liquidated damages in an amount two-times the amount of plaintiff's back pay award or other measure authorized by law, punitive damages, in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00), together with the taxation of reasonable attorney fees, costs and disbursements;

2) On the Second Count: a judgment awarding plaintiff Axelrod back pay, front pay, compensatory damages for mental anguish and loss of enjoyment of life in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00), together with the taxation of costs and disbursements as authorized by statute;

3) On the Third Count: a judgment awarding plaintiff Axelrod back pay, front pay, compensatory damages for mental anguish and loss of enjoyment of life, liquidated damages in an amount two-times the amount of plaintiff's back pay award or

other measure authorized by law, punitive damages, in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00), together with the taxation of reasonable attorney fees, costs and disbursements;

    4)    An award of prejudgment and postjudgment interest; and

    5)    Such further and different relief deemed just and appropriate by this Court.

Dated: New York, New York  
December 3, 2007

Joseph Monaco (JM -7862)  
Attorneys for Plaintiff  
150 East 58th Street – 34th Floor  
New York, New York 10155  
(212) 486-4244